BENJAMIN F. HOLBROOK *vs.* CHARLES F. SETCHEL.

The plaintiff sold the defendant a stock of goods, the price to be determined, for that portion for which the plaintiff produced invoices, by the invoice; for that portion for which he could produce no invoices, by agreement of the parties, and, in case of disagreement, by the decision of a third person. In an action to recover the price, *Held,* that after a completed sale and delivery, the defendant could not call for invoices; that the rejection of evidence that an invoice not produced stated the cost price of goods as greater than the price named by the plaintiff, could not be excepted to by the defendant; that evidence that the plaintiff overstated the cost of certain goods, no fraud being shown, was properly rejected; and that it was correct to charge the jury, that in determining the sum due, they should determine the actual cost of the invoiced goods, and the agreed prices and the prices determined by the third party of the remaining goods; or, that if the parties after the completion of the sale had, upon accounting together, agreed upon a sum due, then that might be taken as the sum to be recovered.

CONTRACT to recover for a balance alleged to be due for a stock of goods sold and delivered under the following written agreement, signed by the parties :

" This agreement, made between B. F. Holbrook, of Maynard, in the State of Massachusetts, of the one part, and Charles F. Setchel, of Norwich, in the State of Connecticut, of the other part, witnesseth, as follows, that is to say, the said Holbrook on his

part agrees on or before the 20th day of November, A. D. 1871, to sell and convey to the said Setchel free and clear of all incumbrances his the said Holbrook's stock of goods and fixtures in the store occupied by him in said Maynard, and to deliver the same together with the possession of said store to said Setchel upon the terms and for the prices following, to wit, that the said Setchel shall pay to said Holbrook for such portion of said goods as the said Holbroook shall produce invoices of, the cost price of the same to be determined by the said invoices; and for such portion of the goods the cost of which cannot be shown by invoices produced, such prices as shall be agreed upon between the said Holbrook and Setchel; or in case of their inability to agree, then at such prices as shall be fixed upon and determined by E. B. Partridge, of Norwich, in the State of Connecticut, whose determination shall be final; and the said Holbrook further agrees that from the total amount of said stock of goods, to be ascertained and determined by the prices aforesaid, to deduct (20) twenty per cent., and for the net amount of said goods and fixtures as shown after deducting the twenty per cent., the said Holbrook agrees to receive in part payment for the said goods and fixtures, a lot of land belonging to the said Setchel, situate in the northerly part of the city of Norwich, in the said State of Connecticut, on the easterly side of the Norwich town road, at the sum of six thousand dollars, ($6000), provided the said Setchel, at the time of the delivery of the said fixtures to him as aforesaid, shall convey to said Holbrook, by a sufficient warranty deed, a perfect title to said land in fee simple, free from all incumbrances, except the privilege of using a drain as shown by deed; and the said Setchel on his part agrees to purchase of said Holbrook the said stock of goods and fixtures upon the terms and for the prices aforesaid, and upon receiving the said goods and fixtures and the possession of said store, to pay the said Holbrook for the said goods and fixtures, said land at six thousand dollars and the residue in cash."

At the trial in the Superior Court, before *Brigham,* C. J., it was proved or admitted that the plaintiff owned a stock of goods in a store kept by him in Maynard, Massachusetts; that after

making the above agreement, the parties went to the store and went over the stock of goods, examining them and ascertaining the amount and quality of each kind ; that a written list of the goods was made by the defendant, and a price put down to each item ; that they completed the making the list of the whole stock November 14, 1871 ; that the defendant had and kept the list in his possession ; that Partridge, referred to in the agreement, was present while the list was making, having come from Connecticut at the defendant's request ; that the list was looked over by the plaintiff and the defendant each night, and after it was completed it was added up and the amount of the whole ascertained ; that November 15, 1871, the plaintiff delivered the stock of goods and the possession of the store to the defendant, which he accepted ; that the defendant then engaged the clerks before employed by the plaintiff, and continued the business ; that after the delivery, the plaintiff had nothing to do with the store, the goods or the business ; that the defendant went to Connecticut to get the deed, referred to in the agreement, and the money ; and within a few days returned and delivered to the plaintiff the deed of land for $6000, gave him a check for $4000, and asked him to take a mortgage for the balance, which he refused to do.

The plaintiff introduced evidence tending to show that he produced some invoices, how many he could not tell, at the time the list was made ; that when none were produced, he and the defendant agreed on the price of most of the goods ; that when they could not agree, Partridge fixed the price ; that a part of the goods were a portion of a general stock of goods bought by him in Waltham some seven months before, and were called the Waltham goods ; that these goods had been mixed with other similar goods in the store ; that many of them had been sold ; that most of the prices marked on them when they were bought had been changed, some of them to prices very much less than they cost the plaintiff ; that the invoice of the Waltham goods was produced only at the time the parties were fixing the prices of crockery ware ; that the defendant refused the prices stated therein, and produced a list of Boston prices, and that thereupon the plaintiff and the defendant agreed upon the prices for the articles

of crockery ware, making some of them less than the prices on the Waltham invoice; that the defendant put down these agreed prices on the list; and that when the plaintiff refused to take a mortgage for the balance of the price, the defendant said he would pay the balance in a short time.

The plaintiff admitted that the prices stated in the invoice of Waltham goods, amounting to nearly $4500, were not what they cost him, but were the prices they cost the party of whom he bought and that he gave the seller $2500 for the whole, irrespective of their cost.

The defendant offered to show that before fixing the prices, it was agreed that after estimates had been made, and after the plaintiff had given the prices, the plaintiff should produce invoices to verify the estimates, and that after the possession of the property was delivered, the deed of land passed and $4000 paid, the defendant asked the plaintiff for invoices, and the plaintiff produced some invoices, the prices on which did not conform to the cost prices given by the plaintiff, but were in excess of that cost as $4500 to $2500.

The court excluded this evidence, except that the defendant was allowed to introduce evidence tending to show he only conditionally agreed to the prices put down by him; and that Partridge did not determine the prices of any of the goods.

The defendant also offered evidence to show that a lot of molasses bought of Thomas Dana & Company was called by the plaintiff as costing more than it actually did, although no invoice of the molasses was produced, or asked for, and it did not appear that the plaintiff had any. The court excluded the evidence.

The defendant offered to show that after he had taken possession of the store and goods, had delivered to the plaintiff the deed, had paid him the $4000, and had been selling the goods for more than two months, he (after this action was commenced) gave the plaintiff written notice dated January 20, 1872, to produce all the invoices before February 6, 1872, and that if he did not, Partridge would be then present at the store in Maynard to fix the prices of the goods. The court excluded this evidence, and, in doing so, ruled that under the circumstances stated it was

too late for the defendant to ask for invoices to fix prices, or to refer to Partridge, the action having been brought before the notice was given. The court also ruled that if the plaintiff produced an invoice while the parties were making out the list of goods and prices, and such invoice was used and relied on by the defendant, and it was not the cost price to the plaintiff, evidence to prove this was admissible; and such evidence was offered and admitted.

The court instructed the jury that the plaintiff, to recover, must prove by a preponderance of evidence the sum due him as the balance of the price; that in ascertaining this balance, the jury must determine the actual cost to the plaintiff of the goods of which he produced invoices, the prices agreed upon by the parties, and the prices determined by Partridge, upon the failure of the plaintiff to produce invoices showing the cost prices, or the failure of the parties to agree upon prices; that proof of the price of the goods fixed by either or all of these methods, would indicate the sum due to the plaintiff, after the payment to him of $10,000; that the plaintiff, irrespective of his proof of the prices of the goods by either or all of the methods indicated, might recover the sum which the parties, after the delivery of the goods, and the payment of $10,000, upon accounting together, agreed to be the balance due under the written contract, if their conduct and dealings together convinced the jury, the burden of proof being on the plaintiff, that such a balance was agreed upon between them.

The jury found for the plaintiff, for $1827.45, the balance claimed by him, and the defendant alleged exceptions

*L. M. Child,* for the defendant.

*W. B. Gale,* for the plaintiff.

WELLS, J. Upon the statements in the bill of exceptions, there was a completed sale and delivery of the stock of goods. All the questions raised at the trial relate only to the prices to be paid. By the contract, those were to be determined in either of three modes. First, "for such portion of said goods as the said Holbrook shall produce invoices of, the cost price of the same is to be determined by said invoices.' Second, "for such portion

of the goods, the cost of which cannot be shown by invoices produced, such prices as shall be agreed upon between said Holbrook and said Setchel." Third, " or in case of their inability to agree, then at such prices as shall be fixed upon and determined by E. B. Partridge." From the total amount so ascertained, there was to be a deduction of twenty per cent.

The instructions from the court presented the case to the jury in precise accordance with these provisions of the contract; and were such as to enable them properly to apply the evidence to the issue before them.

Independently of the proofs in regard to fixing the prices at the time of the transfer of the property, and even if those prices had never been fixed in accordance with the provisions of the contract, if there was a subsequent agreement to pay a specified balance, that sum might be taken by the jury as the true amount of the purchase money then remaining due. The instructions on this point were also correct.

The evidence tended to show that when the stock was examined and the invoice made up for the transfer, Partridge was present for the purpose of deciding all cases of failure to fix the price by the first or second mode provided. Even if the plaintiff was bound to produce all the invoices in his power, or it had been agreed that, after making up the lists with the prices named by him, he " should produce invoices to verify estimates," and he failed to do so, it was too late to call upon him for such invoices after having proceeded to close the transaction without them, and especially after the defendant " had been selling from the goods more than two months."

The evidence offered in regard to certain invoices produced, the prices upon which " did not conform to the cost prices given by the plaintiff, but were in excess of that cost as $4500 to $2500," related, as we suppose, to the " Waltham goods." The invoices of those goods " amounting to nearly $4500 " showed the cost to the person from whom the plaintiff purchased at " $2500 for the whole, irrespective of their cost to the seller." That " the cost prices given by the plaintiff " amounted to $2500 only, while the invoices produced showed $4500, was no wrong to

the defendant, certainly, and did not show that false invoices were produced, or that the plaintiff could or ought to have produced any others. We see no sufficient ground for sustaining the exception to the exclusion of this evidence.

The court also excluded evidence offered by the defendant " to show that a lot of molasses, bought of Thomas Dana & Company, was called by the plaintiff as costing more than it actually did, although no invoice of this molasses was produced, or asked for, nor did it appear that the plaintiff had any." But the cost to the plaintiff was not to govern prices in this sale, unless he produced invoices. In the absence of invoices, the parties were to agree upon the prices, or have them fixed by Partridge. A misstatement of the cost to the plaintiff might affect the defendant in agreeing upon the price ; but unless it was fraudulent or an intentional misstatement, it would not defeat the agreement as to the price. The offer did not go far enough, and the exception to its exclusion cannot prevail.

We do not discover any other point in the bill of exceptions which requires to be considered. *Exceptions overruled.*